UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USAI KYAW SWA OO,

                Plaintiff,

vs.

Case No. 07-CV-12030

HON. GEORGE CARAM STEEH

CAROL JENIFER, District Director
Citizenship and Immigration Services,
DEPARTMENT OF HOMELAND
SECURITY, EMILIO T. GONZALEZ,
Director, U.S. Citizenship and Immigration
Services, ALBERTO GONZALES,
Attorney General of the United States,
MICHAEL CHERTOFF, Secretary,
Department of Homeland Security,

                Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiff Usai Kyaw Swa Oo is suing to compel defendants to make his adjustment to permanent resident status retroactive to at least 1995. This matter is presently before the Court on defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). This court shall decide the motion without oral argument pursuant to Local Rule 7.1(e)(2). For the reasons stated below, defendants' motion shall be granted.

## BACKGROUND

Plaintiff is a citizen of Burma who came to this country on May 24, 1993. On

January 26, 1994, plaintiff pled guilty to conspiring to engage in alien smuggling in violation of 18 U.S.C. § 371. Based on his activities in alien smuggling, the government put him in exclusion proceedings before an Immigration Judge. While those proceedings were ongoing, plaintiff applied for asylum with the Immigration Court in San Francisco and his application was granted on July 21, 1994. He was then eligible to apply for permanent resident status one year after the date his application of asylum was granted.

On February 9, 1996, he applied for lawful permanent resident status. On August 6, 1996, plaintiff was interviewed at the Detroit Immigration and Naturalization Service (INS)[1] in connection with his I-485 adjustment of status application. On that same date, the Detroit INS asked plaintiff to provide his birth certificate and a current employment letter which he did. On December 5, 1996, plaintiff alleges that the INS corresponded with him that his adjustment of status application was approved and as soon as a visa number became available, he would be granted permanent residence. In support of his claim, plaintiff has attached to his Complaint a document purporting to be from the INS which states that plaintiff would have his status adjusted to that of permanent resident alien once a visa number became available. (Exhibit C). Defendants, on the other hand, claim that plaintiff was never told in 1996 that his application was approved. Defendants assert that the note attached to his complaint as Exhibit C is not addressed to anyone in particular, is unsigned, does not appear in

---

[1] In 2003, the INS dissolved and was taken over by the Department of Homeland Security. The division that handles benefits applications, such as adjustment of status, is Citizenship and Immigration Services (CIS).

plaintiff's administrative file, provides no basis for the statements made therein, and was not approved by the INS.

Defendants attribute the delay on a ruling on plaintiff's I-485 to a backlog of asylee and refugee adjustment applicants and a lack of available visas. Available visas were in short supply in 1996 as the law at that time set a cap of 10,000 visas per year for asylee adjustments. This created a backlog and delays in final approval. On May 11, 2005, President George W. Bush signed the Real ID Act, which eliminated the statutory cap on adjustment of status. Now, there is no limit on how many asylee adjustment applications can be granted annually. Plaintiff seeks to have his visa applied retroactively to the date that a visa number first became available after his 1996 application was filed. He alleges that this would date back, at the latest, to May 11, 2005, when President Bush abolished the cap on asylum-based adjustment of status grants. On May 23, 2002, the government filed a motion to reopen plaintiff's asylum proceedings which the Immigration Judge granted on August 26, 2002. On June 8, 2004, the Immigration Judge confirmed the grant of asylum.

Plaintiff married on July 17, 1997. On August 6, 2004, plaintiff filed an I-730 petition for his wife with the help of an attorney. An I-730 petition, once granted, confers follow-to-join benefits on a child or spouse of a person granted asylum. 8 C.F.R. § 208.21(c). An I-730 petition must be filed within two years of the granting of asylum status. Plaintiff filed the petition under the mistaken belief that his asylum status began in June, 2004 when the Immigration Judge confirmed the granting of asylum. But on May 19, 2006, CIS denied the I-730 because he failed to apply within two years of the asylum approval in July, 1994.

On November 25, 2005, plaintiff, through an attorney, filed a second Form I-485. Later he submitted an I-602 waiver form, seeking to excuse his admissibility to the United States pursuant to 8 U.S.C. § 1182(a)(6)(E), relating to alien smuggling. On May 8, 2007, while his second Form I-485 was pending, plaintiff filed this lawsuit to compel adjudication of his application to adjust status. On June 28, 2007, CIS granted the waiver and the application to adjust status. His grant of lawful permanent residence dates back to June 28, 2006, exactly one-year before the date of approval of the adjustment application, as required by 8 C.F.R. § 209.2(f). In its June 28, 2007 letter notifying plaintiff that his application for permanent residence has been approved, the CIS noted, "[s]ince you had two I-485 applications filed on the same basis, for the same benefit, the other one is being terminated."

Although plaintiff now has the permanent resident status he has been seeking for some time, he still is going forward with this lawsuit with the hope that this court will order defendants to make his permanent resident status retroactive to the date when a visa number was first available on his 1996 application minus one year. One reason he wants retroactive application of his change in status is that he wants to seek citizenship. A lawful permanent resident alien may be naturalized as a United States citizen if he meets the five-year statutory residency requirement. 8 U.S.C. § 1427(a).

## STANDARD OF LAW

Defendants have brought their motion under both Rule 12(b)(1) and 12(b)(6). The court first considers the Rule 12(b)(1) motion since, if subject matter jurisdiction is lacking, the Rule 12(b)(6) motion is rendered moot. Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990). To defeat a motion to dismiss for lack

of subject matter jurisdiction, "the plaintiff must show that the complaint 'alleges a claim under federal law, and that the claim is substantial.'" <u>Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.</u>, 287 F.3d 568, 573 (6th Cir. 2002) (quoting <u>Musson Theatrical, Inc. V. Fed. Express Corp.</u>, 89 F.3d 1244, 1248 (6th Cir. 1996)). The plaintiff "will survive the motion to dismiss by showing 'any arguable basis in law' for the claims set forth in the complaint." <u>Id.</u> (quoting <u>Musson</u>, 89 F.3d at 1248). The federal question must also be presented on the face of the complaint. <u>See</u> <u>Rivet v. Regions Bank of Louisiana</u>, 522 U.S. 470, 475 (1998).

ANALYSIS

Plaintiff asserts subject-matter jurisdiction based on the Declaratory Judgment Act, 28 U.S.C.§ 2201; the Federal Question Statute, 28 U.S.C. § 1331; the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act (APA), 5 U.S.C. § 701. The Declaratory Judgment Act does not provide an independent basis for subject matter jurisdiction. <u>Skelly Oil Co. v. Phillips Petroleum Co.</u>, 339 U.S. 667, 671-72 (1950). Similarly, the Federal Question Statute does not provide an independent basis for jurisdiction. Thus, this court shall examine the Mandamus Act and the Administrative Procedure Act to see if subject matter jurisdiction exists.

A.   <u>Mandamus Act</u>

Mandamus in federal court is governed by 28 U.S.C. § 1361 which provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus is an "extraordinary remedy" that "will issue only to compel the performance of 'a clear nondiscretionary duty.'" <u>Pittston</u>

Coal Group v. Sebbon, 488 U.S. 105, 121 (1988) (quoting Heckler v. Ringer, 466 U.S. 602, 616 (1984)).  Mandamus relief is proper when three conditions are met: (1) the plaintiff has a "clear and certain claim" to the relief sought, (2) the defendant official has a "nondiscretionary, ministerial" duty to act "so plainly prescribed as to be free from doubt" and (3) no other adequate remedy [is] available."  Shen v. Chertoff, 494 F. Supp. 2d 592, 595 (E.D. Mich. 2007) (Friedman, J.).

Plaintiff has not shown a "clear and certain claim" to the relief sought.  Plaintiff's application to adjust status has been approved, but he is asking this court to make the ruling retroactive to an earlier date so that he may apply for citizenship sooner.  There is no statutory or regulatory right to have an I-485 application decided in a certain time frame, nor is there any provision allowing for retroactive application of a grant of permanent resident status.

Secondly, for mandamus jurisdiction to exist, it must be shown that the defendants owe the plaintiff a clear nondiscretionary duty that they have failed to perform.  See Will v. Calvert Fire Inc. Co., 437 U.S. 655, 662 (1978); Your Home Visiting Nurse Svcs., Inc. v. HHS, 132 F.3d 1135, 1141 (6th Cir. 1997), aff'd, 525 U.S. 449 (1999).  In this case, plaintiff has failed to show that mandamus relief is warranted because he has failed to show that defendants have a "nondiscretionary ministerial" duty.  Plaintiff argues that defendants have a nondiscretionary duty to make a decision within a reasonable time.  But nothing in the statutes governing adjustment of an immigrant's status to that of a permanent resident require that the adjustment be made within any particular time frame.  Adjustment of an immigrant's status to that of a permanent resident is governed primarily by 8 U.S.C. § 1255 which provides, in relevant

part:

> (a) The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition . . . may be adjusted by the Attorney General, <u>in his discretion, and under such regulations as he may prescribe</u> to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is available to him at the time of his application.

(emphasis added). Nothing in the statute or regulations imposes a time deadline for the processing of I-485 applications, nor is there any provision requiring the retroactive relief plaintiff seeks here.

Many courts have declined mandamus jurisdiction over adjustment related claims. These courts have held that all aspects of adjustment-related claims, including the time period in which they are addressed, are matters within the discretion of the INS/CIS, and thus, are not subject to review by the judiciary. See <u>Safadi v. Howard</u>, 466 F. Supp. 2d 696, 700 (E.D. Va. 2006) (denying mandamus relief where defendant not required to process adjustment of status application at any particular pace), <u>Dridi v. Chertoff</u>, 412 F. Supp. 2d 465, 468 (E.D. Pa. 2005) (mandamus jurisdiction lacking because timeliness of immigration decisions are discretionary), <u>Chaudry v. Chertoff</u>, No. 06-1303, 2006 WL 2670051, *2 (D. MInn. Sept. 18, 2006) (same); <u>Espin v. Ganter</u>, 381 F. Supp. 2d 261, 265 (S.D.N.Y. 2005) (mandamus jurisdiction lacking because immigration status adjustment is wholly discretionary with the Attorney General); <u>Sadowski v. INS</u>, 107 F. Supp. 2d 451, 453 (S.D.N.Y. 2000) (mandamus jurisdiction lacking where INS has discretionary duty to decide matters of immigration status); <u>Tageddine v. USCIS</u>, No. 07-11315 (E.D. Mich. July 12, 2007) (Zatkoff, J.) (court lacks

7

mandamus jurisdiction where INS commits adjudication of adjustment of status applications to agency discretion).

Plaintiff contends that he has the right to have his application adjudicated in a timely manner. In support of this contention, he has cited to several cases where courts have held that there is a duty to complete status adjustment, and other immigration matters, in a reasonable time frame. See Rios v. Ziglar, 398 F.3d 1201 (10th Cir. 2005) (alien seeking to adjust status to lawful resident alien under Nicaraguan Adjustment and Central American Relief Act can bring mandamus claim where processing application is ministerial task, not discretionary); Iddir v. INS, 301 F.3d 492, 500 (7th Cir. 2002) (INS had duty to adjudicate appellants' lottery visa applications within reasonable period of time but mandamus remedy not appropriate where visas could only be awarded within fiscal year for which they were selected and that time period had run); Alkenani v. Barrows, 356 F. Supp. 2d 652, 656-57 (N.D. Tex. 2005) (immigration officials have non-discretionary duty to process naturalization application within reasonable time but 15-month delay not unreasonable); Paunescu v. INS, 76 F. Supp. 2d 896 (N.D. Ill. 1999) (INS had non-discretionary duty to issue a decision on plaintiffs' application for a lottery visa within a reasonable time); Przhebelskaya v. US CIS, 338 F. Supp. 2d 399, 405 (E.D.N.Y. 2004) (CIS had nondiscretionary duty to issue decision on plaintiffs' application for diversity visas within a reasonable time), Kiromi v. USCIS Detroit, No. 07-10446, 2007 WL 2049521 (E.D. Mich. 2007) (Cook, J.) (two-year delay not unreasonable, thus writ of mandamus not appropriate).

Although the above cited cases have held that INS/CIS has a duty to act in a reasonable time, none hold that approval of an I-485 application may be made

retroactively. In fact, case law holds that the INS lacks authority to grant adjustment of status nunc pro tunc. See Dong Sik Kwon v. INS, 646 F.2d 909, 917 (5th Cir. 1981).

Plaintiff cites Wan Shih Hsieh v. Kiley, 569 F.2d 1179, 1182 (2d Cir. 1978), cert. denied, 439 U.S. 828 (1978) for the proposition that he has the right to have his application for permanent residency status decided within a reasonable amount of time. Kiley does not support that proposition. In Kiley, the plaintiff sought to compel the INS to grant immigration visas to her children and to complete its investigation into possible fraud on her part in obtaining status as a permanent resident within a reasonable time. Id. at 1181. The Second Circuit ruled that the court lacked jurisdiction to compel the INS to complete its investigation into her immigration status because whether the INS pursued the investigation was a matter solely within its discretion and was not reviewable by the court. Id. at 1182. The Second Circuit explained that it lacked jurisdiction under the APA or the Mandamus Statute, 28 U.S.C. § 1361, since whether the INS would rescind her status on the basis of alleged fraud was a matter solely within its discretion. In Kiley, the court noted, "[a]side from our powerlessness to intervene, the judicial creation of such a duty would have the potential for mischievous interference with the functioning of already overburdened administrative agencies." Id. at 1182. Clearly, Kiley does not support plaintiff's claim here.

Similarly, Iddir fails to support his claim here. In Iddir, plaintiffs were aliens who applied for permanent resident visas through a lottery program. After plaintiffs were chosen in the lottery, they applied for adjustment of status. Id. at 494. The INS failed to process their applications within the one-year period provided by the regulations for the lottery program, and plaintiffs were later notified that the time period for granting the

petitions had expired. Id. at 495. The Seventh Circuit noted that it had jurisdiction to hear immigration cases in which the INS wholly fails to adjudicate an applicant's status and neither grants or denies relief. Id. at 496. The Court explained that if the appellants "had their applications heard and were denied adjustment of status under section 1255 on the merits, that would be a 'judgment'" covered by section 1252(a)(2)(B) which would not be subject to judicial review. Id. at 498. The Seventh Circuit explained that § 1252(a)(2)(B)(i) bars judicial review of "actual discretionary decisions to grant or deny relief" but where the INS never hears an applicant's request for adjustment of status, that is not a "judgment" or discretionary "decision or action" precluding review. Id. at 498. In our case, the INS/CIS did rule on plaintiff's application for adjustment to permanent resident status so, under the holding in Iddir, this court lacks jurisdiction to hear its application here for retroactive application of his status adjustment.

B.  Administrative Procedure Act

Plaintiff also seeks relief pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq. Just as there is no jurisdiction under the Mandamus Act, so too is jurisdiction lacking under the APA. Plaintiff argues that judicial review is available under 5 U.S.C. § 702 which provides that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Plaintiff further argues that judicial review is available to compel agency action unlawfully withheld or unreasonably delayed under 5 U.S.C. § 706(1). Defendants, on the other hand, claim that judicial review is lacking under the APA where judicial review is precluded by statute, 5 U.S.C. § 701(a)(1), and where the agency action is "committed to agency discretion by law." 5

U.S.C. § 701(a)(2).

Defendants are correct that the Attorney General has sole discretion to process an application for adjustment of status. 8 U.S.C. § 1255(a) (an alien's status "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe"). Moreover, Congress expressly precluded judicial review of "any judgment regarding the granting of relief under section. . . 1255 [adjustment of status] of this title, or . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is . . . in [their] discretion." Shen v. Chertoff, 494 F. Supp. 2d at 596 (citing 8 U.S.C. § 1252(a)(2)(B)(I) and (ii)). Because § 1252 precludes judicial review of discretionary decisions, and § 1255 provides that an adjustment of status is a discretionary decision and is void of any time constraint, judicial review is not possible under the APA. 5 U.S.C. § 701(a)(1) - (2); id. at 597. In sum, defendants are correct that judicial review is not available under the APA because applications to adjust status are committed to agency discretion and matters within agency discretion are precluded from judicial review.

Contrary to this court's holding here, plaintiff has cited to several cases where courts have found that subject matter jurisdiction does exist under the APA for the INS's failure to adjust status within a "reasonable time." See Kim v. Ashcroft, 340 F. Supp. 2d 384, 389 (S.D.N.Y. 2004) (42-month delay raises question of fact as to whether delay is unreasonable); Saleh v. Ridge, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (five-year delay not unreasonable where asylee visas limited to 10,000); Bartolini v. Ashcroft, 226 F. Supp. 2d 350, 355 (D. Ct. 2002) (approximately three-year delay not unreasonable where allegations of fraud surrounded his marriages to United States citizens). Even if

11

this court were to follow that line of cases and hold that jurisdiction exists under the APA, this court's holding would remain the same as this court lacks the authority to make a status adjustment retroactive. Thus, were this court to find that it had jurisdiction, plaintiff's claims would still be subject to dismissal under Rule 12(b)(6) for failure to state a claim. In considering whether a delay in adjudication for adjustment of status to permanent resident alien is unreasonable, the court must consider the complexity of the investigation as well as the extent to which the plaintiff participated in the delay. Saleh, 367 F. Supp. 2d at 512 (citations omitted).

Defendants also argue that due to plaintiff's conviction for alien smuggling under 18. U.S.C § 371, he was not eligible to adjust status without a waiver of inadmissibility under 8 U.S.C. § 1182(a)(6)(E) and 1183(d)(11). Defendants accuse plaintiff of delaying his adjustment to permanent residency status by failing to file a waiver of inadmissibility in regard to his conviction for alien smuggling until after he filed his second I-485 application in 2005. Thus, plaintiff's own conduct contributed to the delay. In addition, it is not disputed that the number of visas available to asylees seeking adjustment to permanent resident status was limited to 10,000 until the law was changed in 2005. Under these circumstances, the INS's delay in ruling on his application for adjustment of status is not unreasonable.

Most importantly, unlike the cases cited by plaintiff where courts have exercised jurisdiction under the APA, this is not a case where the INS/CIS failed to act at all. In point of fact, the CIS approved plaintiff's application to adjust status on June 28, 2007. Plaintiff has offered no legal basis for this court to award him an earlier approval date retroactively.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss hereby is GRANTED.

Dated: March 20, 2008

                                     s/George Caram Steeh
                                     GEORGE CARAM STEEH
                                     UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 20, 2008, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---